It is an appeal from the District Court, Eastern District of Wisconsin. Case number 141762. You want to reserve three minutes for rebuttal? Yes, Your Honor. Wait one second until your closing counsel gets settled. Okay, you may begin. Good morning, Your Honors. My name is Jeffrey Sokol. I represent Nordock, Inc., the plaintiff appellant. This case pertains to a single U.S. patent, a design patent. As this honorable court knows, two U.S. statutes govern damages for design patent cases, 35 U.S.C. 284 and 289. The latter pertains to explicitly designed patents and allows the patentee to recover the defendant's profits. Nordock's appeal deals with the District Court's Rule 59 decision limiting patent damages to 284 reasonable royalties and forgoing a proper determination of damages under 289. These jury instructions were pretty confusing, but I don't see you having objected to them. Why didn't you object to the jury instructions? We didn't object to the 289 jury instruction because it specifically states that systems profits was to be determined by gross revenues. We have no problem with that at all. With respect to the jury instruction, the burden of proof jury instruction, I believe it reads correctly. The judge is misinterpreting it to basically read out Section 289. He's saying that because the burden of proof jury instruction says that it's our burden to prove 284 and 289 or 289, we don't have the right to seek damages under 289, which we clearly did. That's the either or problem that I had with jury instructions. Isn't it more appropriate to say that you're entitled to 289 damages if the jury doesn't find that there are any 289 damages? Then the fallback is the reasonable royalty. Isn't that the way the jury instructions should have been crafted? And you never asked for that. Your Honor, I don't believe that there is a... I mean, to me, it's clear that the instructions are saying that the burden of proof instruction is stating that you can prove 284 or 289, which we did. We proved both of them. And the 289 jury instruction clearly requires a gross revenue method for determining systems profits. That's indisputable. And it also clearly states that we're seeking 289 damages. But you're not entitled to both 289. Absolutely not, Your Honor. This court's decision in Catalina Lighting clearly states we're not entitled to both. But we are entitled to a determination of both. And then one would be selected, not both. Okay, go ahead. So this case is more specifically pertains to who gets to keep the profits that systems acquired from its sale of 1,450 hydraulic dock levelers found to infringe NORDOC's design patent. These 1,450 infringing sales are not in dispute. There's also no dispute that systems profits on these infringing levelers was over $630,000. Both systems and NORDOC's experts testified and submitted reports showing that systems profits were over $630,000. And yet, against all the weight, against all the evidence, and against all logic and reason, the jury came back with a determination that systems profits were zero. The district court's Rule 59 decision fails to correct this. Instead, the district court confusingly cites the systems experts' cost savings method for use to determine reasonable royalties to improperly determine that 289 damages are zero. Did you challenge that methodology either through Daubert or by objection at trial? What method? The cost savings method? Yes. The cost savings method is relevant for determining reasonable royalties under 284. The cost savings method is not relevant for determining systems profits under 289. Okay, so did you ask for a limiting instruction to that effect? Your Honor, we believe that the cost savings method is irrelevant for 289. And the more important focus should be on why the judge, the district court judge, allowed the systems juries to find that systems profits were zero when the jury instructions clearly require a gross revenue methodology. And testimony was given by systems experts to the gross revenue method. And systems provided a jury instruction, which was adopted by the court, that mandated a gross revenue methodology. Okay, so your answer is no, you didn't ask for a limiting instruction so that the jury would not be confused between the two different methodologies. There was no limiting objection, Your Honor. Okay. Is it fair to say that the jury found that systems profits here on the dock levelers was zero? Because the way I read the verdict form, it looked like what the jury had done was concluded that it was going to use reasonable royalties under 284 and decided to award 46 grand rather than awarding systems profits or your lost profits. Well, it's the jury verdict clearly, I mean, question one of the jury verdict clearly requires a determination of damages or of infringement based on the LHP and LHD levelers. And the jury clearly found that it was the levelers themselves that were infringing. And question four of the jury instruction, which systems did not object to, clearly requires a determination of systems profits. And the jury clearly indicated that those profits are zero. Right, but if you look at the first sentence of number four, it says, for the amount of money in question two, please indicate the amount, if any, for each of the following categories. And so, you know, a reasonable reading of the verdict form is that the jury chose its damages award based on a reasonable royalty calculation under 284 rather than using a defendant's total profits theory under 289. There's absolutely no evidence to support a finding of zero profits for systems. It's the evidence, all the evidence is that the profits are $630,000 and it is, the jury was empowered to make a determination of those profits, asked to determine them. The 289 jury instruction clearly requires that. I guess your point is, I guess your point is, as a matter of law, the jury needed to use whichever was the higher damages theory with the largest damage award. And because, in your view, systems total profits is far larger than any reasonable royalty theory, then therefore, as a matter of law, the judge needed to grant you damages under the defendant's total profits. Is that your theory? Our theory is that the 289 jury instruction clearly states, in this case, NORDOC seeks systems profits. And if you find infringement and do not find the 754 design patent invalid, you are to award NORDOC systems total profits attributable to the infringement. That is the instruction that the jury received. Was there testimony at trial about the $630,000? Absolutely. Can you point me to it? Sure. If your honor has NORDOC's reply brief, it would be found on page 19, our response brief. But more specifically, I would direct the court's attention to systems' own experts' testimony at trial relevant to gross profits. And that's found on A6685 of the appendix. And here we see that the title of the screen is systems sales and profits, accused dock levelers. They have sales or gross revenues of $13 million, over $13 million, for both the hydraulic and mechanical levelers. There's evidence here that they sold 1,457 levelers. This is undisputed testimony by their own expert. They also show that they have operating profits of over, or of about $2 million. Right, but his number then didn't come out to $630,000. I thought it came out to something in the $400,000 range. Isn't that right? Yes, it is. The operating profit on an individual leveler is $433 per leveler. And if you simply multiply 1,457 by 433, that gives you over $630,000 in profits. It's simple math. And they also, which was in evidence at trial that the jury had available to it, is that the system's own expert earlier on gave a rebuttal report, which clearly acknowledged that at that time, they had sold 622 infringing dock levelers, and clearly indicates that at that time, those levelers produced profits of $270,000. Again, this is information that the jury had available to it. Our expert argued for a higher number, and the difference between those two has to do with SG&A. So they're both experts are in agreement, basically, on the profits, except for the SG&A portion of it. The Systems Council made an argument in closing about the scope of the article of manufacture that you say was inconsistent with the law. Did you object to that argument at closing? Your Honor, I did not object to closing out of professional courtesy, but also because it's just not relevant. Cost-savings methods are relevant for 284, which can be limited to a portion of the infringing product. They're clearly inappropriate, though, when you're determining 289 damages, because 289 damages, as this court knows from its recent decisions, are not apportionable because Congress said so. And so applying a reasonable royalty cost-savings method to a 289 determination is just irrelevant, particularly when the jury instructions clearly require a 289 finding based on gross profits, and Systems' own expert testified to gross profits through reports and testimony. I assume we're doing both arguments here together, both issues together, the way you all have divided up the time. So let me ask you about the issue on cross-appeal. What evidence was there in the record to support the jury's conclusion of infringement with respect to the six-and-a-half-foot leveler? Of infringement? Yes. There was evidence. There were screens put up which show the patent, the views of the patent, and show the product of Systems. Did you show the six-and-a-half-foot product? That was not shown. That was not shown. There was no evidence submitted with respect to the six-and-a-half-foot leveler, correct? I believe there was evidence. And the evidence, it's pretty good evidence, actually. There's evidence that all the levelers are manufactured on welding skids. The skids are set up so that the middle six-foot section is going to be identical, whether it's a six-foot, six-and-a-half-foot, or seven-foot leveler. So you had the jury, they saw pictures and compared evidence for the six, they compared it for the seven. The only difference is how it is a matter of three inches on each end of those levelers. And the jury is allowed, as this court knows, to infer from the evidence, make reasonable inferences. Is there evidence that that's how Systems manufactures its levelers? Yes. They testified that they were producing them. I thought I saw testimony about that's how other manufacturers manufacture their levelers, but there wasn't anything specific about this. This is also how Systems goes about its manufacturing, using the same, whatever you call it, skid. I believe the briefs cover that issue, Your Honor, and I believe there is evidence that they are made on welding skids and it's standard practice in the industry. Mr. Gleason had worked at a number of organizations where he had developed those, and that's the way they're done in all of those. To be more specific, there wasn't any testimony about Systems specifically using this particular, you know, unitary manufacturing skid. It was more about how, in the industry as a whole, based on anecdotal evidence of how other manufacturers did it, that therefore the inference must be that Systems likewise does it that way. Is that a fair accounting of the testimony? I believe there was testimony, and I believe it's in the briefs, and I'll rely on what the briefs say, Your Honor, but I believe there was testimony that they did manufacture their back levelers on skids, and the briefs would cover that issue. If it's not there in the briefs, then there was no evidence. If it is there, it was in the briefs. All right. Okay. Well, you're, I'm sorry, you're into your rebuttal. We'll restore your three minutes of rebuttal, and we'll give an extra two minutes to the other side if it's needed. Mr. Mann? Good morning, Your Honor. May it please the Court, I'm Philip Mann on behalf of the Eppley Systems, Inc. With me at council table is Mike Pilgrim, Systems President. Your Honor, the district court in denying the post-trial motions said, the motions are denied because the jury reasonably relied, in reaching its verdict, the jury reasonably relied on the evidence presented at trial. And really, that's all that needs to be said in this case. Well, wait. How can any reasonable juror say that there were zero profits? Because of the interpretation of the claim, of the instructions. The instructions quite clearly told the jury, you can award a reasonable royalty, you can award lost profits, or you can award a systems profit. So you're saying that the jury instructions were legally wrong? No, I'm not saying the jury instructions were legally wrong. I'm saying the jury instructions are what they are. There's an absolute entitlement to 289 damages if they exist. Well, that was not what the jury instructions said. And as the Court correctly pointed out... The 289 jury instructions said that if you find 289 damages, you must award them. If you find them, that's a key point, if you find them. Now, we do not... Are you telling me there was zero evidence at trial, that at trial, the evidence supported a zero profits for systems? If the jury does not believe the experts, as the jury is free to discount the testimony of every expert... So you're saying the jury should sit there and say, both experts talked about different numbers of profits, and the jury is free to say, okay, well, he says it's 500,000, and he says it's a million. I think it's zero. And you think the jury could reach that conclusion? Certainly, Your Honor. If there's substantial evidence to support that conclusion? If there's substantial evidence. Now, that is the key question. Right. So what's the substantial evidence to support a zero profit determination? Because what we're saying is Dr. Smith, who testified on behalf of Nordak, was not believable at all. We filed successful Dalbert motions to exclude much of his testimony. He embarrassed himself at trial, was admonished by the judge. He did not make any sense. The jury is free to totally discount Dr. Smith's testimony, and I think at this point, Nordak is not even relying on Dr. Smith's testimony. Is there any dispute whether or not there was lost profits? Our expert did dispute that. Our expert said that the profits on the article of manufacture that is actually covered by the design patent, our expert said that those profits are less than the $15 per unit. So there was a dispute as to the amount, but that's not what I asked. I asked whether there was a dispute as to whether there was any lost profits. Well, I assume you mean systems profits, Your Honor, not lost profits. Not Nordak's lost profits. There was a lost profits theory involved here. Right. We're talking about systems profits. Systems profits, that's what I assume so. It's not our burden of proof on that issue. There has to be testimony, evidence in the record from which the jury's conclusion can be supported. You just told us that even with the legally erroneous description of lost profits that your expert used, he still had a number. Yes, he did. And you're saying that there's still substantial evidence in the record for a zero. All I can say, Your Honor, is the jury is free to say, I don't believe that expert on that point. And if I can explain how this could happen, we have to remember here, Nordak is saying in his briefs, Nordak is saying that our expert, Mr. Bureau, was a nutcase, didn't know what he was talking about. He applied the wrong methodology. He certainly applied the wrong methodology. He told the jury that as a legal matter, that they could look at an article of manufacture, which under the law, they can't. I mean, the law is very clear on design patents. You can't just pick out pieces of the design and say that's all it is. For 289, you look at the entire article, the entire product. No, he looked at the entire article of manufacture on which the design is applied. We had a factual dispute on that. Nordak is saying that is the entire dock leveler. Our position is no. If you look at what the patent actually says. That's a legal issue. It's not an expert issue. Well, he said he concluded, well, that's how he calculated his damages. Now, the thing is, during cross-examination, as Nordak has the ability to do, if they think that our expert is incompetent and is applying the wrong standards or is reaching unreliable conclusions, that's the purpose of cross-examination, to get up there and demonstrate that this supposed expert does not know what he's doing. But that didn't happen here, or if the attempt was made, that didn't happen here. The jury is free to rely on what they heard, and the point I keep making is, if what they hear doesn't make sense, if the jury looks at what the experts are saying and says, I have no idea what's going on here, they are free to conclude. Did they hear evidence that lost profits were zero? Our evidence on lost profits. Did the jury hear evidence that lost profits were zero? I don't believe that the jury heard the word zero. What the jury heard was Mr. Bureau say, I'm calculating reasonable royalties. On the basis of reasonable royalties, I conclude that a reasonable royalty here is $15 per unit. He then said, looking at the system's profits, my conclusion is system's profits is less than $15 per unit. Therefore, I did not calculate precisely. If the jury heard testimony that system's lost profits were X from the plaintiff and Y from the defendant, and the jury came back and said, a million dollars in lost profits, would you still be standing here and saying the jury is free to reject both sides' testimony? Well, if the testimony was incredible, yes. And they were allowed to just pick a number? Well, I'm sorry. Let me back up. Your hypothetical is the number exceeds the number presented by either juror. No, that's different, Your Honor. That's different than picking a number that is lower than presented by either side? Yes, because it's a failure of proof. If I come in there, if I try to prove that it's X, and somebody else comes in and tries to prove that it's Y, and the jury says, I can't understand either of these things, so I can't make a determination, all I can conclude is neither side proved any damages. So based on the evidence I hear, which is evidence I cannot accept because I don't trust it, the jury can say there's a failure of proof. But that's not what the jury said. The jury had a form and filled in the numbers zero. Exactly, and I think the court correctly concluded what happened here. What the jury correctly concluded, there are three questions that were asked. One is, what is a reasonable royalty? But that shouldn't have been the first question, should it? The first question should be, under 289, are there system lost profits that have been proven? Rule 51, Your Honor. If there's a problem with the jury instructions, it was up to NORADOC to file a timely objection and tell the judge, judge, you're doing this wrong. That failed here. We can't keep going back. You know, that's the purpose of having the discussion of the jury instructions. We spent a couple hours with the judge going over the jury instructions. That's the purpose of that discussion. But there's a jury instruction that says, jury, if you find infringement and that the patent is not invalid, then jury, you are to award systems total profits on the infringing product. And the jury also had an instruction saying that if you award reasonable royalties, you are not to award systems profits. No, it said you're not to award NORADOC lost profits. It didn't say you're not to award systems profits. That's not – the jury instructions were horribly confusing, but it did not say that. It said that if NORADOC has proved lost profits – I'm sorry. It talked about the systems profits and said if they've proven that, they're entitled to it. And then it talked about 284, where you talk about NORADOC's lost profits and reasonable royalty. And it's that instance where the jury was told they could pick. They were never told they could pick between systems profits under 289 and a reasonable royalty under 284. But I believe if you read further down in that instruction, there's something – I'm going from memory here. And obviously, this is written down. It says what it says. But I believe at the end of that instruction, it says something to the effect that you are not supposed to make two awards. And that would exclude an award of systems profits. I'm admittedly going from memory here, Your Honor. Doesn't Catalina Lighting say that juries should pick the damage award that's higher between the 284 and 289 calculation? It does, but the point here is – And the evidence that NORADOC is pointing to is that your own expert acknowledged that the systems profits on the infringing DOC levelers, when you add it all up, far, far exceeds 46K. Again, all I can say, Your Honor, is NORADOC has the burden of proof on this. And even if we present an expert that says the number is this, the jury is free to say if they don't believe that expert, the jury can say there's been no proof on this particular factual issue. But the point is that your expert conceded this, acknowledged this, that there were profits made on every single infringing leveler. And then when you multiply that to the number of infringing levelers, you get a number in the hundreds of thousands. Well, what happened here, again, is – And so, therefore, the judge in denying the Rule 59 motion was relying on this testimony from your expert that under a cost-savings theory, that the system's profits would be something less than $15 per unit. And that's an apportionment theory to the DOC leveler. And we just said in Apple versus Samsung, are you familiar with that opinion? I am familiar with that case, Your Honor. That you don't do apportionment approach to 289 damages. There are two different apportionments here. There's one you try to attempt to apportion how much of the profit is attributable to the design. What we are saying here is there's a factual dispute as what is the article of manufacture. We are saying the article of manufacture is that hinge plate and the lip plate and the hinge, which is what the literal language of the patent says. But, again, our case law is very clear that you don't parse the article of manufacture based solely on an aspect of the design. That our case is over and over and over. In other words, if you've got a design of the top of a tennis shoe, it's the whole shoe is the article of manufacture. You don't parse the article of manufacture that way as a matter of law. Well, again, we get down to the question that we raised in our brief, and I believe this also came up coincidentally in the recent Apple-Samsung case, is what happens if it's a hubcap on a car? I believe in that case, what if it's a taillight attached to a car? Does that apply to the entire automobile? Another example we have is... Would you say this lip plate is attached to the rest of the dock leveler? It is attached. It's welded. No, it's welded. It's all together. It's down to... I mean, welds can be cut. It comes down to at what point does something become detachable and at what point doesn't it? So you're saying that your lip hinge plate is detachable? What I'm saying is that's what our expert testified to. He testified that your lip lug hinge plate is detachable? He didn't testify that it's detachable. He said that is the article of manufacture. But that's a legal conclusion. You didn't ask for a jury instruction. You didn't ask for the judge to define the article of manufacture. You had an expert who's not a lawyer, not the judge, tell the jury what the article of manufacture was. That's not a factual dispute. That's a legal dispute. Then why should he believe when he testified what the profits are? I'm not saying that to be flippant, Your Honor, but that is the fundamental problem that we have here, is Nordach is saying, on the one hand, your expert's not an expert. He cannot be believed. His conclusions are erroneous. However, on this one point here, that one he got right. The others he got all wrong, but this one he got right. And that's why we have juries, is to resolve those types of things. On your cross appeal, you're challenging the judgment of validity, but it seems to me that you didn't preserve that issue. Well, Your Honor, what I would rather address on that one would be the six-and-a-half-foot dock leveler. On the validity, I believe we did, as we pointed out in our papers, we made oral objections at all stages of the trial. We renewed our JMOL at the conclusion of the case, including after the verdict was read. We did not do that in writing. We believe under Seventh Circuit law that doesn't have to be rewritten. But the renewal was just a reference to whatever motions we passed before, you know, we hereby renew those. You think that's sufficient under Rule 7 and Rule 50B? I believe in the circumstances of this case, it was, Your Honor, because this was the subject the judge had already heard. At this point, the judge, Judge Rand, had already heard these issues at least three times and possibly more. When I look at what was actually said, did you argue the case below? I did. I mean, Mr. Mann, you didn't even know what they were. The court says, I indicated the court's going to enter judgment. This is the discussion that you had on the JMOLs. The court said, as I indicated, the court's going to enter judgment based on any post-trial motions. It says, any post-trial motions to be made at this juncture. You respond, well, I guess at this point, Judge, just as a routine matter, whatever motions we made during the trial, JMOL and so forth, we would renew those motions to the extent that they are necessary. Now, I don't see anything specific in that request, anything that would help guide the court as to what arguments you're preserving. There's nothing specific, nothing particular about those. And you say, anything else? And your response is, everything we made, we renewed. I'm not sure what that is. But just for the record, whatever we said before, so you weren't even sure as to what arguments you made. And when I balance that against the applicable law, it just does not seem to me that you preserved these issues. Well, Your Honor, at this point, there was a little bit of levity between us and the court. I believe the court himself said, after I said that, I'm not sure what my rulings were on those either. But whatever they are, I'm ruling the same way. I think we're reading a little bit too much. That's not really what the rule contemplates. I mean, the rule even talks about filing a post-trial motion. I mean, aren't you supposed to really preserve these issues? How does the court even know what it is that you're objecting to or what it is you think there has been insufficient evidence as it relates to without saying what it is? Again, Your Honor, at this point, as I mentioned, we had already been through this several, if not hours, certainly tens of minutes of argument on exactly these points. The judge was very conscientious, heard us out on our arguments, why we thought that the… I mean, your first argument was a paragraph, the one that you're now saying you incorporated. The first, Jamal, was really just a paragraph. No, I believe it was more than that. We talked extensively about why this was functional. But, again, I think we're taking time away from I think what is a more important issue on this thing is, you know, the six-and-a-half foot leveler also. What I say we put in our brief, I believe the Seventh Circuit law says that the motion does not need to be in writing. Obviously, the court decides whether I'm correct or not on that. But that's what we're relying on is the Seventh Circuit law that says that although the better practice is to put it in writing, it need not be in writing. But either way, it needs to be specific, even if it's moral. You have to state a basis or a grounds for the renewal. Oh, we did do that. I'm certain that is in the record because we talked extensively about the testimony we heard from Mr. Gleason where he outlined on the drawing of his own patent. So if we don't find that in the record, then you're saying it's okay, that we're perfectly okay to find that you did not preserve this for appeal? I don't think it's up to me to do what's okay. I mean, the court will do what it does. I believe it's in the record, Your Honor, if I'm mistaken that I'm mistaken. You're talking about your 50A oral motion, not your 50B oral motion. The 50B oral motion doesn't go into any detail. I would say so, yeah. Again, it was the same motion. We did one at the close of the plaintiff's case. We did one at the close of our case. And we did one after the jury verdict was read. Substance of all those motions did not change. It was basically substance of our motion was what was presented during the plaintiff's case in chief. And we relied, again, as I said, on the testimony of Mr. Gleason where he himself identifies all elements of the alleged design as being functional. Okay, you're over your time. Okay, thank you, Your Honor. Thank you. Your Honors, I would like to point out one thing that I think the court may already be aware of, but I just want to make sure of it. And that is that if you turn to page 12 of NORDOC's response brief, it clearly shows a picture of systems leveler. And it clearly shows that the predominant portion or the front-end design is predominantly displayed in those brochures. There also was evidence at trial that they were welded. It's an integral part of the product. It's necessary to perform the intended function of the machine. Without it, it won't. It was sold as a complete unit by systems. The levelers were not sold without the front-end. And the evidence is that the front-end was not sold separately. Customers, in fact, did look to the front-end design when they were purchasing the decisions. There's evidence to that at trial. And as this court is aware, the Congress has stated it is the design that sells the article. With respect to the district court's jury instruction, improper interpretation of the jury instruction, I would just add that that improperly creates a legal fiction that no determination of 289 damages is necessary if it's adopted. And thus guts Congress's intent for enacting 289. It also avoids the undisputed fact that question four of the jury instruction clearly asked the jury to determine systems' profits. The confusion, I believe, that was prevalent with the district court was generated by the arguments that systems made to the district court that were squarely rejected by this court in the recent Apple decision that the article of manufacture is not the appropriate focus. It's the entire profit. We believe that systems' cost savings method is not relevant to 289 damages because it's contrary to established law, well-established law, speculative in nature, and negates Congress's intent for enacting 289. With respect to the invalidity arguments that were discussed, NORDOC would simply renew its briefing on the waiver and forfeiture arguments. With respect to the six-and-a-half-foot levelers, after thinking about it, Your Honor, I don't know that there was any testimony by systems with respect to the machines being made on a fixture, but they do talk about them being welded. And there was no evidence by systems refuting our testimony, which was entered earlier, that they're all made on fixtures. Systems never submitted any evidence saying that's just not true, we don't do that. Is that a standard practice? It's my understanding from the record that that would be a standard practice in the industry. And from the trial record. If there's no further questions, Your Honor. Okay, the case will be submitted.